# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Brian E., | Civ. No. 22-372 (ECT/BRT) |
|      Plaintiff, | |
| v. | |
| Kilolo Kijakazi, | **REPORT AND** |
| Acting Commissioner of Social Security, | **RECOMMENDATION** |
|      Defendant. | |

Clifford Michael Farrell, Esq., Manring & Farrell, counsel for Plaintiff.

Michael A. Moss, Esq., Social Security Administration, counsel for Defendant.

BECKY R. THORSON, United States Magistrate Judge.

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability benefits. This matter is before the Court on the parties' cross–motions for summary judgment, in accordance with D. Minn. LR 7.2(c)(1). This matter has been referred to the undersigned magistrate judge for a Report and Recommendation pursuant to 28 U.S.C. § 636. For the reasons set forth below, this Court recommends that Defendant's motion be granted and Plaintiff's motion be denied.

## BACKGROUND

Plaintiff is a 55-year-old man who suffers from several mental health impairments, including anxiety, depression, and panic attacks.[1] On January 24, 2020, Plaintiff applied for disability insurance benefits under Title II of the Social Security Act, alleging a disability onset date of December 4, 2019. (Tr. 346–47.)[2] After his application was denied initially and on reconsideration, an administrative hearing was held before an Administrative Law Judge ("ALJ") on March 25, 2021. (*Id.* at 184–219, 262–66, 275–77.) At the hearing, Plaintiff explained that his anxiety made it difficult for him to be around people, but that he had been making progress thanks to various coping skills. (*Id.* at 193, 198–99, 205.) Plaintiff also explained his aversion to taking certain medications because of his paranoia regarding their side effects. (*Id.* at 199.)

In a decision dated May 5, 2021, the ALJ proceeded through the sequential five-step evaluation process.[3] (*Id.* at 76–90.) The ALJ found at step one that Plaintiff had not

---

[1]    Plaintiff also suffers from various physical impairments, including diabetes mellitus with neuropathy, hypertension with premature ventricular contractions (PVCs), plantar fasciitis and Achilles tendinopathy with peroneus brevis tendon tear, obesity, and degenerative disc disease of the cervical spine. (Tr. 78–79.) However, because these physical impairments are not central to Plaintiff's claim on appeal, this Court does not address them further.

[2]    Throughout this Report and Recommendation, the abbreviation "Tr." is used to reference the administrative record. (Doc. No. 12.)

[3]    The ALJ must conduct a five-step evaluation to determine whether a claimant qualifies as "disabled." At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. Step two requires the ALJ to determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." At step three, the ALJ determines whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the

engaged in substantial gainful activity since December 4, 2019, the alleged disability onset date. (*Id.* at 78.) At step two of the analysis, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus with neuropathy, hypertension with premature ventricular contractions (PVCs), plantar fasciitis and Achilles tendinopathy with peroneus brevis tendon tear, obesity, degenerative disc disease of the cervical spine, major depressive disorder (MDD), and generalized anxiety disorder (GAD). (*Id.* at 79.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 79–83.) Next the ALJ determined Plaintiff had a residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) with certain physical limitations. (*Id.* at 83.) Regarding Plaintiff's mental RFC, the ALJ determined that Plaintiff could:

- understand, remember, and carry out only simple and routine instructions and tasks;

- have only occasional interaction with supervisors and coworkers;

- not work with the general public; and

- perform only low stress work—defined as work involving only simple work-related decisions, only occasional changes in the work setting, and no production-paced work, such as work on a moving assembly line or involving hourly quotas (bench work and daily quotas would not be a problem).

---

criteria of a listed impairment. Before step four, the ALJ determines the claimant's RFC. At step four, the ALJ determines whether the claimant has the RFC to perform the requirements of his past work. And at step five, the ALJ determines whether the claimant can do any other work considering his RFC, age, education, and work experience. *See* 20 C.F.R. § 404.1520.

(*Id.*) The ALJ noted that these RFC limitations would accommodate Plaintiff's paranoia and social avoidance stemming from his anxiety. (*Id.* at 87.)

Considering the RFC and the testimony of the vocational expert, the ALJ found that Plaintiff could not perform his past relevant work as an automobile salesperson or driver at step four. (*Id.* at 89.) However, at step five, after considering Plaintiff's RFC, age, education, and work experience along with the testimony of the vocational expert, the ALJ found that Plaintiff could perform various jobs that exist in significant numbers in the national economy. (*Id.* at 89–90.) Accordingly, the ALJ concluded that Plaintiff is not disabled. (*Id.* at 90.)

On December 9, 2021, the ALJ's decision became the final decision of the Commissioner when Plaintiff's appeal was denied by the Appeals Council. (Tr. 1–7); 20 C.F.R. § 404.981. Plaintiff initiated judicial review with this Court on February 8, 2022. (*See* Doc. No. 1, Compl.) The administrative record in this matter was filed on April 13, 2022. (Doc. No. 12.) The parties' cross-motions for summary judgment are now before this Court for consideration. (Doc. Nos. 14, 16.)

## DISCUSSION

## I.    Standard of Review

A claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairments must be of such severity that he is not only unable to do his previous work

4

but cannot, considering his "age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

The claimant bears the burden of proving disability. *Whitman v. Colvin*, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant demonstrates that he cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the residual functional capacity to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citations omitted).

The Court has the authority to review the Commissioner's final decision denying disability benefits to Plaintiff. 42 U.S.C. § 405(g); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). If the Commissioner's decision is supported by substantial evidence in the record as a whole, then the decision will be upheld. 42 U.S.C. § 405(g); *Kluesner*, 607 F.3d at 536 (citations omitted). "[T]he substantiality of the evidence must take into account whatever fairly detracts from its weight, and the notable distinction between 'substantial evidence' and 'substantial evidence on the record as a whole,' must be observed." *Bauer v. Soc. Sec. Admin.*, 734 F. Supp. 2d 773, 799 (D. Minn. 2010) (citations omitted). This test requires "more than a mere search of the record for evidence supporting the Secretary's findings." *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987). If, after review, the record as a whole supports the Commissioner's findings, the

Commissioner's decision must be upheld, even if the record also supports the opposite conclusion. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).

## II.    Analysis

Plaintiff argues that the ALJ failed to properly address the medical opinions of his treating nurse John Franzen and consultative examiner Dr. Jay Phillippi in determining his RFC. The RFC is a measure of "the most [a claimant] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1). When determining the RFC, an ALJ must consider all medical opinions submitted and evaluate them for persuasiveness. 20 C.F.R. § 404.1520c. For claims like Plaintiff's that were filed on or after March 27, 2017, the weight assigned to medical opinions is governed by 20 C.F.R. § 404.1520c. *Pemberton v. Saul*, 953 F.3d 514, 517 n.2 (8th Cir. 2020). Under this regulation, the ALJ does not defer to any medical opinions, including opinions from the claimant's treating medical sources. 20 C.F.R. § 404.1520c(a). The ALJ instead considers all medical opinions according to five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F.R. § 404.1520c(c). Supportability[4] and

---

[4]    The regulations define the factor of "supportability" as follows:

The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1).

consistency[5] are the most important factors, and the ALJ must explain how those two factors were considered in determining the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(b)(2). The ALJ is not required to explain the remaining factors unless the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. § 404.1520c(b)(2)-(3).

### A. The March 2021 opinion of treating nurse John Franzen, APRN, CNP

John Franzen began treating Plaintiff on September 14, 2020, at the Lakeview Behavioral Health Clinic. (Tr. 961.) At his first appointment, Plaintiff expressed issues with anxiety and social avoidance and noted that he sometimes looked for ways to avoid helping customers at his job. (*Id.*) Franzen noted this was his "first visit for psychiatric help." (*Id.*) Franzen performed a mental status examination, which indicated Plaintiff's mood was normal (though depressed); his thought processes, attention span,

---

[5]    The regulations define the factor of "consistency" as follows:

The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(2). The word "consistent" in the regulations "is the same as the plain language and common definition of 'consistent'" and "includes consideration of factors such as whether the evidence conflicts with other evidence from other medical sources and whether it contains an internal conflict with evidence from the same medical source." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854 (Jan. 18, 2017).

concentration, and judgment were intact; and he appeared well-groomed. (*Id.* at 969.) (*Id.*) Franzen diagnosed Plaintiff with depression, generalized anxiety disorder, and noted a history of traumatic brain injury from Plaintiff's past. (*Id.* at 970.) Franzen prescribed Plaintiff Ativan for Plaintiff's panic attacks and set up a plan to follow-up in two weeks. (*Id.*)

On October 26, 2020, Plaintiff met with Franzen again. (*Id.* at 972.) Franzen noted Plaintiff's continuing anxiety and discussed mindfulness techniques to help alleviate his stress. (*Id.*) Franzen also noted that Plaintiff had been "somewhat avoidant of many treatments" and Plaintiff told Franzen that the medications bothered his stomach. (*Id.*) Franzen performed another mental status exam, which again indicated that Plaintiff's mood was normal (though depressed); his thought processes, attention span, and concentration were intact; and he appeared well-groomed. (*Id.* at 973.) Franzen noted that Plaintiff's judgment appeared impaired, but only mildly. (*Id.*) Franzen then prescribed Plaintiff 5 mg of Lexapro and requested a follow-up appointment in a month. (*Id.* at 976–77.)

On November 23, 2020, Plaintiff met with Franzen over the phone to discuss the results of some testing and suggest medications that Franzen felt would be best for him. (*Id.* at 978.) Plaintiff, however, would not take the medications recommended by Franzen based on their rare side effects. (*Id.* at 978–79.) Franzen conducted another mental status exam, which again indicated that Plaintiff's mood was normal (though depressed), and his thought processes, attention span, concentration, and judgment were intact. (*Id.* at 979.) Franzen then requested another appointment in three weeks. (*Id.* at 983.)

8

On December 28, 2020, Plaintiff was seen by both video and phone. (*Id.* at 985–86.) Franzen noted that Plaintiff still refused certain medications due to his concern regarding their side effects: "[Plaintiff] continues to perseverate on medication and side effects. At this time writer would have no success with medication as he would plant the seed of failure in his mind and experience any side effect that he would read about." (*Id.* at 986.) Franzen commented that Plaintiff would need therapy to "get over his fear of taking medications." (*Id.* at 990.) Franzen also noted that Plaintiff, though exhibiting poor insight, appeared "pleasant and [c]ooperative throughout our interaction":

> Cognitive function is intact. Speech was clear and without pressure. Mood stated as good, affect euthyrnic. Thought processes while linear and goal-directed were also rather perseverative. Thought content remained focused on our interaction.

(*Id.* at 986.) Franzen echoed these same observations in his mental status observations. (*Id.* at 986–87.) Franzen then requested a follow-up appointment in a month. (*Id.* at 990.)

On January 25, 2021, Plaintiff met Franzen by video. (*Id.* at 1062.) Again, Franzen noted that Plaintiff was "pleasant and [c]ooperative," his "[c]ognitive function" was "intact," his mood was "okay," and his "thought process" was "linear and goal-directed," but that his insight was poor and his "[t]hought content tends to be somewhat perseverative." (*Id.* at 1063.) Franzen also noted that Plaintiff still refused to take recommended medication. (*Id.*) Franzen discussed mindfulness techniques and motivational strategies that Plaintiff could incorporate into his life to help him cope with his anxiety. (*Id.*) On his mental status observations, Franzen again noted that Plaintiff's mood was normal (though depressed) and his thought processes, attention span, and

concentration were intact, but that his judgment was moderately impaired, and his insight was poor. (*Id.* at 1063–64.) Franzen requested a follow-up appointment in a month. (*Id.* at 1068.)

On February 16, 2021, Plaintiff met with Franzen via video (*Id.* at 1071.) Plaintiff noted that, after implementing mindfulness techniques, he had seen progress in his anxiety levels: "[Plaintiff] does state that he's been doing a better job with this and feels that he's using more thoughtfulness when dealing with other people." (*Id.* at 1072.) Franzen also made observations that Plaintiff appeared relatively normal:

> [Plaintiff] was pleasant and [c]ooperative throughout our interaction. Cognitive function is intact. Speech is clear and not pressured. Mood stated as good, affect euthymic. Thought processes are linear and goal-directed. Thought content remains focused on our interaction.

(*Id.* at 1071.) Franzen echoed these notes in his mental status observations: Plaintiff's mood was normal (though depressed); his thought processes, attention span, concentration, and judgment were intact, and that he had good insight. (*Id.* at 1072.) Franzen then discussed additional mindfulness practices and guided imagery to assist with Plaintiff's coping skills. (*Id.* at 1071–72, 1076.)

On March 1, 2021, Franzen completed a check-the-box Mental Medical Source Statement ("MMSS"). (*Id.* at 1058–61.) In the MMSS, Franzen diagnosed Plaintiff with major depressive disorder, traumatic brain injury, and generalized anxiety disorder and noted that Plaintiff' suffered from "significant memory issues." (*Id.*) Franzen also indicated Plaintiff's functional limitations, namely that Plaintiff would be:

- "not or mildly" limited in his ability to maintain socially-appropriate behavior and adhere to basic standards of neatness and cleanliness;

- "moderately limited"[6] in his ability to carry out very short and simple instructions; maintain attention and concentration for more than two hour segments; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; make simple work related decisions; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others;

- "markedly limited"[7] in his ability to remember locations and work-like procedures; understand and remember very short and simple instructions; understand and remember detailed instructions; work in coordination with, or proximity to, others without being distracted by them; ask simple questions or request assistance; be aware of normal hazards and take appropriate precautions; and tolerate normal levels of stress; and

- "extremely limited"[8] in his ability to carry out detailed instructions; complete a normal workday and work week, without interruptions from psychologically-based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and travel in unfamiliar places or use public transportation.

(*Id.* at 1060.) Franzen then stated that Plaintiff would require unscheduled breaks during

the workday in addition to the standard breaks provided by employers. (*Id.* at 1059.)

Additionally, Franzen stated that every day would be a "bad" day for Plaintiff, that

Plaintiff likely would be absent from work for more than 3 days per month as a

---

[6]    According to the MMSS form, "moderately limited" means the "individual is able to function satisfactorily." (Tr. 1060.)

[7]    According to the MMSS form, "markedly limited" means there are "serious limitations" such that there is "substantial loss in the ability to function independently, appropriately, and effectively on a sustained basis." (Tr. 1060.)

[8]    According to the MMSS form, "extremely limited" means there are "major limitations" such that there is "substantial loss in the ability to function independently, appropriately, and effectively on a sustained basis." (Tr. 1060.)

result of his impairment, and that he had a minimal capacity to adapt to changes in his

environment or demands that were not already part of his daily life. (*Id.*)

The ALJ addressed John Franzen's March 2021 opinion in her written opinion and

found it unpersuasive:

> Nurse Franzen's opinion at Exhibit 16F is not persuasive. He opined that
> claimant has had several marked to extremely limited aptitudes necessary to
> perform even unskilled work primarily in terms of understanding,
> remembering, or applying information, in interacting with others in a work
> environment as well as some stress and persistence or pace limitations.
> However, this opinion is not consistent with his own notes, which indicate
> improvement even without medication, despite short course treatment. It is
> also not consistent with the minimal mental status exam findings. The
> indication of longstanding panic is not supported by his short-term
> treatment of the claimant or with records of claimant exhibiting those
> symptoms when being seen by other providers. Overall, Nurse Franzen's
> opinion is not well supported, not consistent with the record as a whole, and
> not persuasive (Ex. 16F).

(Tr. 88.)

On appeal, Plaintiff argues that the ALJ, when addressing Franzen's opinion, did

not properly evaluate the supportability and consistency factors under 20 C.F.R. §

404.1520c. On review, this Court finds that the ALJ properly evaluated both factors. As

to supportability, the ALJ found that Franzen's opinion was not supported based on his

short-term treatment or the records provided by Plaintiff. Plaintiff had only met with

Franzen (who is not a psychologist or psychiatrist) six times over six months, mostly via

the phone or over video. Franzen's notes indicate that Plaintiff struggled with anxiety and

panic attacks but do not include any observations or findings that would support the

severe limitations Franzen opines. Additionally, the record as a whole does not provide

any other supporting observations by other physicians, let alone psychologists,

12

psychiatrists, or mental health specialists that would further support the severe limitations recommended by Franzen or the notion that Plaintiff had longstanding panic issues. Franzen also acknowledges in his opinion that the history of Plaintiff's symptoms and limitations dating back to his alleged onset date was "per patient" and thus based on what Plaintiff subjectively reported rather than supported by his own observations and findings. (Tr. 1061); *see also Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) ("The ALJ was entitled to give less weight to Dr. Harry's opinion, because it was based largely on [Plaintiff's] subjective complaints rather than on objective medical evidence."). The ALJ, therefore, properly evaluated the supportability factor, and substantial evidence in the record supports the ALJ's conclusion that the severe limitations expressed in Franzen's opinion are not supported.

As for consistency,[9] the ALJ found that Franzen's opinion was inconsistent with Franzen's mental status exam findings he had made over the course of his visits with Plaintiff. "An ALJ may discount a medical source's opinion if he concludes the opinion is inconsistent with treatment notes." *Mashona M. v. Kijakazi*, No. 21-CV-00633 (HB), 2022 WL 2220918, at *14 (D. Minn. June 21, 2022); *see also Martise v. Astrue*, 641 F.3d 909, 926 (8th Cir. 2011) (affirming the ALJ's finding that the medical opinion regarding

---

[9]    The Commissioner notes that, though the ALJ referenced the word "consistency" when discussing Franzen's opinion, the ALJ was in fact addressing the "supportability" of Franzen's opinion. (Def.'s Mem. 11.) But the Commissioner does not point to anything in the record indicating the ALJ meant to use a different word. Moreover, the ALJ clearly uses the word "consistency" in the context of discussing the consistency of Franzen's opinion, and there is nothing in the decision to indicate the ALJ meant "supportability" instead. Thus, this Court reads the ALJ's use of the word "consistency" to mean the consistency factor under 20 C.F.R. § 404.1520c.

the plaintiff's mental impairments was less persuasive where the physician's notes were inconsistent with his opinion). Here, several of the mental status exam findings by Franzen indicated that Plaintiff typically had a normal mood; that his thought processes, attention span, concentration, and judgment were intact; and that he had relatively good insight. (*See, e.g.*, Tr. 969, 973, 979, 986–87, 1072–73.) These findings are inconsistent with the severe mental limitations Franzen placed on Plaintiff, which did not reflect the relatively minimal findings regarding Plaintiff's thought, attention, concentration, judgment, and insight that Franzen noted at Plaintiff's visits. *See, e.g.*, *Ralph v. Kijakazi*, No. 4:20-CV-00785-SRC, 2021 WL 4476707, at *5 (E.D. Mo. Sept. 30, 2021) (concluding that the ALJ appropriately found two medical opinions unpersuasive regarding the plaintiff's mental limitations where the ALJ found, in part, that the opinions were inconsistent with Plaintiff's mental status examinations). Moreover, such extreme limitations are also inconsistent with Plaintiff's treatment: Plaintiff only saw Franzen once a month for medication management, had not been referred for more extensive treatment or an evaluation by a psychologist or psychiatrist, and did not have any psychiatric hospitalizations. *See, e.g.*, *Frank v. Colvin*, 129 F. Supp. 3d 794, 809 (E.D. Mo. 2015) (finding the ALJ properly found Plaintiff's treating physician's opinion regarding the plaintiff's mental limitations to be unpersuasive because the treating physicians' opinion "was inconsistent with his treatment notes" and the treating physician "was not a psychiatrist or psychologist").

    In addition, the ALJ found that Franzen's opinion was inconsistent with the improvement that Plaintiff had made, even without medication, despite short course

treatment.[10] Indeed, within only a month of discussing specific mindfulness techniques and motivational strategies, Plaintiff reported making progress in his anxiety. (Tr. 1072.) Plaintiff also acknowledges he "was starting to make progress" in this regard. (Pl.'s Mem. 12.) And though Plaintiff's paranoia at this time prevents him from taking more long-term medications, Plaintiff takes Ativan,[11] which he uses to treat and reduce his anxiety when it reaches the level of a panic attack. (Tr. 199, 1072.) These facts reflect that Franzen's severe limitations are inconsistent with the record.

Plaintiff also argues that the ALJ should have found Franzen's opinion persuasive because Franzen's opinion was consistent with the prior administrative medical findings from State Agency psychologists Nicole Robicheau, Psy.D., and P.E. Shields, Ph.D. (Tr. 88, 227–28, 230–32, 246–47, 249–51.) As background, Dr. Robicheau and Dr. Shields reviewed Plaintiff's application regarding his mental limitations at the initial and reconsideration levels, respectively. Both found that Plaintiff was, at most, moderately limited in some broad areas of mental functioning, but that Plaintiff was not significantly limited in most mental functioning areas. (*Id.* at 230–32, 249–51.) Dr. Robicheau's mental RFC assessment concluded the following:

---

[10]    Plaintiff states that, when the ALJ noted that Franzen's treatment record showed improvement, the ALJ made a "gross misrepresentation of the record" by indicating Plaintiff was cured and his anxiety resolved. (Pl.'s Mem. 12.) But the ALJ did not say Plaintiff's condition had been cured or his anxiety resolved – only that Plaintiff had shown improvement. (Pl.'s Mem. 12.)

[11]    "Ativan (Lorazepam) is used to relieve anxiety. Lorazepam is in a class of medications called benzodiazepines. It works by slowing activity in the brain to allow for relaxation." *Constant v. Astrue*, No. 11-0455-CV-W-REL-SSA, 2012 WL 2684971, at *8 (W.D. Mo. July 6, 2012).

Available data suggests the Claimant retains the capacity to understand, remember, and carry out simple instructions; attend /concentrate for extended periods with simple activities; make reasonable judgments while engaging simple, routine tasks; interact with the general public, co-workers and supervisors on an incidental basis. Clmt is capable of adapting to a routine and predictable work environment, recognizing typical hazards, traveling to routine locations, and setting goals independently within the framework noted above.

(Tr. 232.)

Dr. Shields's mental RFC assessment added the following to Dr. Robicheau's

conclusions:

On reconsideration file evidence is in line with the initial determination which is persuasive and supported and suggests no change in the limitations described above. [Dr. Jay Phillippi's][12] opinion is persuasive and supported by the file medical and suggests the N/H can manage a setting consistent with simple instructions and simple routine tasks. File evidence is in line with the allegations and is consistent.

(*Id.* at 251.) The ALJ found both Dr. Robicheau's and Dr. Shields's opinions persuasive.

(*Id.* at 88.)

Plaintiff argues that because Dr. Robicheau's and Dr. Shields's findings are

consistent with Franzen's findings, it follows then that the ALJ should have also found

Franzen's opinion persuasive. But contrary to Plaintiff's assertion, Franzen's opinion is

not consistent with Drs. Robicheau's and Shields's assessments. While Franzen's opinion

indicated several "marked" and "extreme" limitations in various areas of mental

functioning, Drs. Robicheau's and Shields's assessments indicated that Plaintiff was only

moderately limited in some areas of mental functioning and not significantly limited in

---

[12]    As further elaborated below, Dr. Jay Phillippi is a psychologist who performed a consultative examine of Plaintiff in June of 2020.

most. Moreover, Drs. Robicheau's and Shields's opinions indicated that Plaintiff is capable of working with some limitations, while Franzen's opinion concluded more severe limitations, namely that Plaintiff would require unscheduled breaks during the workday, have only bad days, and be absent from work more than three times per month. Thus, because Franzen's opinion is not consistent with Drs. Robicheau's and Shields's opinions, the ALJ did not err in finding Dr. Robicheau's and Dr. Shields's opinions persuasive while finding Franzen's opinion unpersuasive.

Accordingly, for the reasons noted above, this Court finds that the ALJ, when evaluating Franzen's opinion, properly addressed the supportability and consistency factors under 20 C.F.R. § 404.1520c.

### B. The June 2020 opinion of consultative examiner Dr. Jay Phillippi

On June 30, 2020, Plaintiff appeared for a consultative psychological evaluation by consultative examiner Dr. Jay Phillippi. (Tr. 885–87.) Dr. Phillippi performed a mental status exam in which he observed that Plaintiff showed difficulties with thought (such as memory and focus issues), his mood was anxious, his concentration was limited, but that he had "adequate judgment and insight," appeared oriented, and had an average IQ. (*Id.* at 886.) Dr. Phillippi then gave the following opinion regarding Plaintiff's capability:

> Based on this examination, [Plaintiff] demonstrates a lack of ability to work
> with optimal capacity in most situations given his deficits and functioning.
> He may work minimally and for short periods at an acceptable pace and
> with persistence as long as it does not over tax his ability. He has not held a
> successful long-term job since his medical problems have interfered with
> his ability (deferred to medical). His deficits in mood, motivation, and
> worry will likely result in reduced pace, persistence, and performance in

vocational settings. He will likely be adequate only in brief and superficial contacts with others. He is expected to have the ability to manage his own funds.

(*Id.* at 887.)

In her decision, the ALJ found Dr. Phillippi's opinion unpersuasive because it was

vague:

> Dr. Phillippi's consultative examination opinion is vague. The indication that the claimant demonstrates a lack of ability to work with "optimal capacity" does not actually provide a limitation regarding the most the claimant can do. Other statements regarding short periods of work at an acceptable pace is similarly vague in terms of how long these periods are. Dr. Phillippi further notes that the claimant has not held a long term job, but this again is vague and in fact, not necessarily consistent with some of his jobs, which spanned more than a couple of years. The indication of reduced pace, persistence, and performance is similarly vague and to the extent "brief and superficial" is interpreted as additionally limiting it is not consistent with the minimal mental status exam findings. Overall, this opinion is not well supported and is not consistent with the record as a whole and not persuasive (Ex. 7F).

(Tr. 88.)

Plaintiff argues that the ALJ did not properly evaluate the supportability and

consistency factors under 20 C.F.R. § 404.1520c when addressing Dr. Phillippi's opinion.

Contrary to Plaintiff's assertion, however, the ALJ sufficiently addressed both factors. As

the ALJ noted, Dr. Phillippi's opinion regarding Plaintiff's limitations was vague and did

not provide quantifiable, work-related limitations. Indeed, instead of providing function-

by-function limitations, Dr. Phillippi generally noted that Plaintiff would have "reduced

pace, persistence, and performance in vocational settings," lacked an "ability to work

with optimal capacity," and could work "minimally and for short periods at an acceptable

pace and with persistence." (Tr. 887.) These limitations failed to provide measurable

18

limits and were thus, as the ALJ concluded, "vague." This was an acceptable reason to find Dr. Phillippi's opinion less persuasive as it indicated that Dr. Phillippi's opinion contained less relevant "supporting explanations" and therefore less supportability. 20 C.F.R. § 404.1520c(c)(1); *see also Arden B. v. Kijakazi*, No. 21-CV-2008-KEM, 2022 WL 4636221, at *6 (N.D. Iowa Sept. 30, 2022) (finding the ALJ did not err where the ALJ found a medical opinion's limitations too vague to be instructive).

Additionally, the ALJ addressed the consistency of Dr. Phillippi's opinion by finding that, to the extent some of Dr. Phillippi's conclusions could be interpreted as being more limiting than Plaintiff's mental RFC, his conclusions were not consistent with several of the mental status exam findings by Franzen, which, as already noted above, indicated that Plaintiff typically had a normal mood; that his thought processes, attention span, concentration, and judgment were intact; and that he had relatively good insight. *See Martise*, 641 F.3d at 926. Moreover, the ALJ correctly noted that Plaintiff had held various jobs, which was not necessarily consistent with Dr. Phillippi's notes that Plaintiff had not held a long-term job. (Tr. 88.)

Plaintiff contends that the ALJ should have found Dr. Phillippi's opinion persuasive because Drs. Robicheau and Shields cited Dr. Phillippi's findings as persuasive. (*See, e.g.*, Tr. 251 (noting that "[Dr. Jay Phillippi's] opinion is persuasive and supported by the file medical and suggests the N/H can manage a setting consistent with simple instructions and simple routine tasks."). Plaintiff is correct that Drs. Robicheau and Shields found Dr. Phillippi's conclusions persuasive. However, in interpreting Dr. Phillippi's vague conclusions, Drs. Robicheau and Shields did not find Dr. Phillippi's

19

opinion to be *more* restrictive than the ALJ's RFC determination. Instead, they interpreted Dr. Phillippi's nonquantifiable limitations to equal their limitations, which were consistent with the ALJ's RFC determination save for the fact that the ALJ's RFC established even *greater* restrictions regarding Plaintiff's interaction with the public. (Tr. 88.) In other words, when Drs. Robicheau and Shields cited Dr. Phillippi's opinion as persuasive, their conclusions did *not* interpret Dr. Phillippi's conclusions to describe any greater limitation than the ALJ's RFC determination. Therefore, there is nothing that is "internally inconsistent" about the ALJ's evaluation of Dr. Phillippi's opinion. (Pl.'s Mem. 17.) Thus, for the reasons noted above, this Court finds that the ALJ, when evaluating Dr. Phillippi's opinion, properly addressed the supportability and consistency factors under 20 C.F.R. § 404.1520c.

For all of the reasons stated above, and because substantial evidence supports the ALJ's RFC determination, the Court finds that the ALJ did not err in determining that Plaintiff could perform light work with the limitations noted in the ALJ's decision, and Plaintiff's motion should be denied.

# RECOMMENDATION

Based on the foregoing, and all the files, records, and submissions herein,

**IT IS HEREBY RECOMMENDED** that:

1.      Plaintiff's Motion for Summary Judgment (Doc. No. 14) be **DENIED**;

2.      Defendant's Motion for Summary Judgment (Doc. No. 16) be **GRANTED**; and

3.      Judgment be entered accordingly.

Date: October 17, 2022                    *s/ Becky R. Thorson*_____
                                          BECKY R. THORSON
                                          United States Magistrate Judge

# NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within fourteen (14) days after being served a copy" of the Report and Recommendation. A party may respond to those objections within fourteen (14) days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).